# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:15-cr-00172 |
| | ) | CHIEF JUDGE CRENSHAW |
| JOHN J. CAUTHON, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

A jury convicted John Cauthon of four counts of health care fraud for falsely billing Medicare, TennCare or insurance companies for performing toenail avulsions when he never performed that procedure. The Court now must establish the amount of loss Cauthon caused under his scheme to defraud, pursuant to United States Sentencing Guidelines § 2B1.1(b)(1). The Government has the burden to prove the amount of loss by a preponderance of the evidence. United States v. Jones, 6641 F.3d 706, 712 (6th Cir. 2011). Once the Government establishes a loss amount, Cauthon has the burden to offset his loss amount by a preponderance of the evidence. United States v. Washington, 715 F.3d 975, 984 (6th Cir. 2013). The Court "does not have to establish the value of the loss with precision; it simply needs to publish the resolution of contested factual matters that formed the basis of the calculation." United States v. Poulsen, 655 F.3d 492, 513 (6th Cir. 2011) (quotation marks omitted).

I.

It is undisputed that during the time period covered by the Indictment, Cauthon was the largest biller for nail avulsion procedures in the State of Tennessee. To calculate the loss amount, the Government proposes that the Court take the 90th percentile of highest podiatrist billers in

Tennessee, credit Cauthon for up to that number, and then deem the remaining $216,685.75 in claims fraudulent. (Doc. No. 216 at 2-3.) Cauthon seeks to dispute this calculation by subpoenaing all records of nail avulsions he performed in the relevant time period (Doc. No. 214), giving those records to two expert witnesses, and having them estimate the number of fraudulent claims Cauthon submitted. Before the Court are Motions to Quash the Subpoenas by Humboldt Nursing and Rehabilitation Center, Dyer Nursing and Rehabilitation Center, Bells Nursing and Rehabilitation Center, Alamo Nursing and Rehabilitation Center (Doc. No 207); and Kindred Nursing and Rehabilitation Northhaven (Doc. No. 210). The motions are granted.

Generally, a "subpoena may order the witness to produce books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). Subpoenas of documents are appropriate "where it is shown that: (1) the documents are evidentiary and relevant; (2) they are not otherwise procurable, with due diligence, in advance of trial; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial; and (4) the application was made in good faith and is not a fishing expedition." United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990) (citing United States v. Nixon, 418 U.S. 683, 699 (1974)). Rule 17(c) was "not intended to provide an additional means of discovery," but instead to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) (citing United States v. Md. & Va. Milk Producers Ass'n, D.C., 9 F.R.D. 509 (D.C. D.C. 1949)). Therefore, on a prompt motion, "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Id. at (c)(2).

Cauthon's subpoenas are overly broad and production of the documents would be unreasonable or oppressive. In determining whether production is unreasonable or oppressive, the

Court weighs whether "the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case." United States v. Hardy, 224 F.3d 752, 756 (8th Cir. 2000). Here, while possibly relevant, it is not clear how relevant the subpoenaed documents will be to Cauthon. He purports to use the hundreds or thousands of documents he has subpoenaed in hopes that he can prove that he caused less than $216,685.75 of damages. To do so, he would have to prove that he properly billed more than the 90th percentile of toenail avulsion procedures. Cauthon never avers that he can meet this burden with these documents. (Doc. No. 217 at 2-3.) Instead, Cauthon only wishes to have the records to prove the actual amount of loss, which the Government is not required to prove under §2B1.1.

Even further, in order for Cauthon to limit his Guideline range for his sentence, he would need to prove that the loss is less than $150,000. U.S.S.G. § 2B1.1(b)(1)(E). In other words, Cauthon would not just have to offset the amount of loss up to the 90th percentile of billers in Tennessee, but also an additional $66,685.75 in order for the offset to make any difference in his Guideline Range. While any offset may affect the total amount of his restitution, the likelihood that any of the documents making an effect on Cauthon's sentencing Guideline range is not very high.

Based on the limited relevancy, asking the targets to spend 45-60 days producing these records at a cost of $13,000 is grossly disproportional for what Cauthon intends to prove. Instead, Cauthon is attempting to take discovery, which is not allowed under Rule 17(c), and because Cauthon does not actually know what he is going to discover, he is undertaking a fishing expedition. Accordingly, the Court finds that production of the subpoenaed records would be "unreasonable and oppressive," and the Court grants the motions to quash.

II.

Cauthon also filed a Motion to Compel five categories of documents. (Doc. No. 226.) The first category of documents are "[c]olor photographs of patients['] feet that defendant performed nail avulsions" taken by Special Agent Angela Beverly that the Government did not present during trial. (Doc. No. 226 at 1.) These documents were provided to Cauthon's first counsel, Isaiah Gant, and the Court recently granted Cauthon's Motion to Compel Isaiah Gant's file. (Doc. No. 224.) Accordingly, this request is moot.

The next four categories of request all go to the "statistical analysis performed by the Government" to show the amount of loss that Cauthon caused. (Doc. No. 226 at 2-3.) The Government states that these documents do not exist. (Doc. No. 227.) The Government then laid out exactly how it is estimating the loss caused by Cauthon: That the 90th percentile biller in Tennessee billed $2,800 in toenail avulsions in 2014, so the Government estimated that the remaining $60,868 that Cauthon billed in that year were fraudulent. The Government then repeated the same formula for the year 2015. (Doc. No. 224 at 2-3.) Accordingly, Cauthon's motion to compel documents that do not exist is denied.

III.

For the foregoing reasons, the Motions to Quash (Doc. Nos. 207, 210) are **GRANTED**, and Cauthon's Motion to Compel (Doc. No. 226) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE